IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| TTI CONSUMER POWER TOOLS, INC., F/K/A ONE WORLD TECHNOLOGIES, INC. D/B/A TECHTRONIC INDUSTRIES POWER EQUIPMENT,<br><br>               Plaintiff,<br><br>v.<br><br>ENGINEERED PLASTIC COMPONENTS, INC.,<br><br>               Defendant,<br><br>and<br><br>ENGINEERED PLASTIC COMPONENTS, INC.,<br><br>               Counter-Plaintiff,<br><br>v.<br><br>TTI CONSUMER POWER TOOLS, INC., F/K/A ONE WORLD TECHNOLOGIES, INC. D/B/A TECHTRONIC INDUSTRIES POWER EQUIPMENT,<br><br>               Counter-Defendant. | Civil Action No. 8:22-cv-04085-TMC |

## DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND JURY DEMAND

Defendant Engineered Plastic Components, Inc. ("EPC"), through its attorneys, Haynsworth Sinkler Boyd, P.A. and Foley & Lardner LLP, submits the following Answer, Affirmative Defenses, and Counterclaim to the Amended Complaint filed by Plaintiff TTI Consumer Power Tools, Inc., f/k/a Techtronic Industries Power Equipment ("TTI").

<u>**PARTIES AND JURISDICTION**</u>

1.      Upon information and belief, admitted.

2.      Admitted.

3.      EPC admits only that the parties entered into a Master Supply Agreement (the "Agreement"), the terms of which speak for themselves.  EPC denies the remaining allegations of this paragraph.

4.      EPC admits only that it shipped certain products at issue to locations as directed by TTI and that it has entered into the Agreement with TTI, the terms of which speak for themselves. The remaining allegations contained in this paragraph set forth legal conclusions to which no response is required.  To the extent response is required, EPC denies the remaining allegations in this paragraph.

5.      EPC admits only that Section 24.9 of the Agreement contains the language referenced: "Any dispute, controversy or claim arising out of or relating to this Agreement, including the validity, invalidity, breach or termination thereof, shall be submitted to and finally resolved by litigation at the court of the place where TTI is domiciled having jurisdiction.  This Agreement shall be governed and interpreted in all respects by and according to the laws of the State of South Carolina."  The remaining allegations contained in this paragraph set forth legal conclusions to which no response is required. To the extent a response is required, EPC denies the remaining allegations in this paragraph.

<u>**FACTUAL BACKGROUND**</u>

6.      EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

7.      EPC admits that TTI engaged EPC to produce and supply to TTI certain modular storage products consisting of various toolboxes, boxes and crates that would be part of the Ryobi

Toolbox Program that TTI had with Home Depot. EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this paragraph and, therefore, EPC denies them.

8.      EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

9.      EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

10.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

11.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

12.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

13.     EPC admits only that it received a request for a quote from TTI, and responded to the same request.  EPC further states that these materials speak for themselves, and EPC denies TTI's allegations to the extent they are not supported by or inconsistent with the quotation materials.  EPC denies as untrue the remaining allegations of this paragraph.

14.     EPC admits only that it met with representatives of TTI in September of 2020, to discuss EPC's background, footprint, customer base, and certain capabilities with TTI.  The contents of this meeting are reflected in the PowerPoint document that EPC shared during the meeting with TTI.  EPC denies any allegations in this paragraph to the extent they are inconsistent with the contents or attendees of the meeting as referenced in this September 2020 PowerPoint document, which should be in TTI's possession.

15.     EPC admits only that at the September 2020 meeting, the parties discussed the topics covered in the PowerPoint presented during the meeting.  EPC denies the allegations that are not supported by or inconsistent with the PowerPoint covered during the hearing, and denies as untrue the remaining allegations in this paragraph.

16.     EPC admits only that it had certain manufacturing expertise, including expertise with materials and tooling.  EPC denies the allegations to the extent TTI suggests that TTI relied on EPC's expertise with tooling, as TTI engaged a separate vendor to manufacture the tooling.  EPC denies the remaining allegations in this paragraph, including any characterizations of wrongdoing or breach of the Agreement on its part.

17.     EPC admits only that it had previously performed complex molding projects for other customers, including customers in the automotive field, and that EPC communicated the same to TTI.  EPC further admits that TTI's representatives visited EPC's facility located in Siler City, North Carolina, sometime in 2021.  EPC denies the remaining allegations in this paragraph, including any suggestion that EPC made any representations regarding specific complex manufacturing processes at issue in this case, or any other characterizations of wrongdoing or breach of the Agreement on its part.

18.     EPC denies as untrue the allegations in this paragraph.

19.     EPC only admits that the parties discussed the various aspects of EPC's proposal, as reflected in the quotation materials and the ultimate Agreement, and signed the Agreement on the terms set forth therein.  EPC denies as untrue the remaining allegations in this paragraph, including any characterizations of wrongdoing or breach of the Agreement on its part.

20.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

21.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

22.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

23.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

24.     EPC denies as untrue the allegations in this paragraph.

## The TTI/EPC Master Supply Agreement

25.     EPC admits only that the parties entered into the Master Supply Agreement.  The terms of this Agreement speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph.

26.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

27.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, including any subparagraphs, and any allegations that are not supported by or inconsistent with the Agreement.

28.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

29.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

30.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

31.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

32.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

33.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

34.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

35.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

36.     The allegations contained in this paragraph set forth legal conclusions to which no response is required.  To the extent a response is required, EPC denies any characterizations of wrongdoing or breach of the Agreement on its part and otherwise denies as untrue the allegations in this paragraph.

37.     EPC admits only that the parties entered into the Master Supply Agreement, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

38.     EPC only admits that it agreed to the terms of the parties' Agreement, which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

39.     EPC denies as untrue the allegations in this paragraph.  EPC specifically denies any suggestion that any delays in the schedule were caused or related to EPC's conduct.

40.     EPC denies as untrue the allegations in this paragraph.

41.     EPC denies as untrue the allegations in this paragraph.

42.     EPC denies as untrue the allegations in this paragraph.

43.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

44.     EPC denies as untrue the allegations in this paragraph.  EPC specifically denies any suggestion that any delays in the schedule were caused or related to EPC's conduct.

45.     EPC denies as untrue the allegations in this paragraph.

46.     EPC denies as untrue the allegations in this paragraph.

47.     EPC denies as untrue the allegations in this paragraph.

48.     EPC denies as untrue the allegations in this paragraph.  EPC specifically denies any suggestion that to the extent the Minimum Inventory Requirements were not reached, failure to do so was caused or related to EPC's conduct.

49.     EPC admits only that the Agreement contains Section 3.3, the terms of which speak for themselves.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

50.     EPC denies the allegations in this paragraph as untrue, and denies any suggestion that EPC breached the parties' Agreement or otherwise acted wrongfully with regard to the warehouse space.

51.     EPC admits only that it agreed to develop the space necessary to store TTI's products.  EPC denies as untrue the remaining allegations in this paragraph and denies any suggestions of wrongdoing or breach of the Agreement on its part.

52.     EPC admits only that it sent to TTI certain materials demonstrating the arrangements that EPC was making to store the inventory for TTI.  EPC denies as untrue the allegations in this paragraph and denies any suggestions of wrongdoing or breach of the Agreement on its part.

53.     EPC admits only that EPC sent TTI an email dated November 17, 2021, which speaks for itself.  EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the November 17, 2021 email at issue. EPC denies the remaining allegations in this paragraph.

54.     The allegations contained in this paragraph set forth legal conclusions to which no response is required.  To the extent a response is required, EPC denies any characterizations of wrongdoing or breach of the Agreement on its part and otherwise denies as untrue the allegations in this paragraph.

55.     EPC denies as untrue the allegations in this paragraph.

56.     EPC denies as untrue the allegations in this paragraph.

57.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them as untrue. EPC specifically denies any suggestions of wrongdoing or breach of the Agreement on its part.

58.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them.

59.     EPC denies as untrue the allegations in this paragraph.

60.     EPC denies as untrue the allegations in this paragraph.

61.     EPC denies as untrue the allegations in this paragraph.

62.     EPC denies as untrue the allegations in this paragraph.

63.     EPC denies as untrue the allegations in this paragraph.

64.     EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them as untrue. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

65.     EPC admits only that as of the date the Complaint was filed, Stratosphere provided certain services to TTI.  EPC denies as untrue the remaining allegations in this paragraph and, therefore, EPC denies them and any other characterizations of wrongdoing or breach of the Agreement on its part.

66.     EPC denies as untrue the allegations in this paragraph.

67.     EPC denies as untrue the allegations in this paragraph.

68.     EPC admits only that it was taking reasonable efforts to hire staff needed to support the TTI project, including certain efforts undertaken via Facebook—among other recruitment methods.  EPC denies as untrue the remaining allegations in this paragraph.

69. To the extent this paragraph relates to what TTI discovered upon visiting EPC's Facebook page, EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them. EPC denies the remaining allegations in this paragraph as untrue, including the suggestion that EPC's recruitment efforts were insufficient or that EPC misrepresented the extent of its recruitment efforts to TTI.

70. EPC admits only that the Agreement contains Section 8.2, which speaks for itself. EPC denies allegations in this paragraph to the extent they are not supported by or inconsistent with the quotation materials. EPC denies as untrue the remaining allegations of this paragraph.

71. EPC admits only that some of TTI's employees came to EPC's facility in January 2022 and chose to work at EPC's facility on various design issues for which TTI was responsible, with the assistance of EPC's employees. EPC denies as untrue the remaining allegations contained in this paragraph, and specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

72. To the extent the allegation relates to the costs of sending TTI's employees to EPC, EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them as untrue. EPC denies as untrue the remaining allegations contained in this paragraph and specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

**EPC's Alleged Breach of its Delivery Obligations**

73. EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC leaves TTI to its proofs.

74. EPC denies as untrue the allegations in this paragraph.

75. EPC admits only that it entered into the Agreement, which speaks for itself. EPC denies as untrue the remaining allegations in this paragraph. EPC denies as untrue the allegations in this paragraph.

76. EPC denies as untrue the allegations in this paragraph.

77. EPC denies as untrue the allegations in this paragraph.

78. EPC denies as untrue the allegations in this paragraph.

79. EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations related to the cost of any expedited freight and, therefore, EPC denies them as untrue. EPC denies any remaining allegations in this paragraph as untrue and specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

80. EPC denies as untrue the allegations in this paragraph.

81. EPC denies as untrue the allegations in this paragraph.

82. EPC admits only that the Agreement contains various pricing provisions, which speak for themselves. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

83. EPC admits only that the Agreement contains Section 4.1 and the TTI Pricing File 111720, which speak for themselves. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

84. EPC admits that the parties went through several revisions to the Agreement, which are reflected in the drafts of the Agreement exchanged between the parties. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement or the drafts thereof.

85. EPC states that the Agreement speaks for itself. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

86. EPC admits only that the Agreement contains Section 4.1 dealing with price adjustments, which speaks for itself. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

87. EPC admits only that the Agreement provides the circumstances for making various pricing adjustments. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the Agreement.

88. EPC admits only that it requested certain price increases, as detailed in the various written correspondence between the parties. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the parties' correspondence. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

89. EPC admits only that it requested certain price increases, as detailed in the various written communications between the parties. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the parties' correspondence. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

90. EPC admits only that it requested certain price increases, as detailed in the various written correspondence between the parties. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the parties'

correspondence. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

91. EPC admits only that it requested certain price increases, as detailed in the various written correspondence between the parties. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the parties' correspondence. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

92. EPC admits only that it requested certain price increases, as detailed in the various written correspondence between the parties. EPC denies as untrue the remaining allegations of this paragraph, and any allegations that are not supported by or inconsistent with the parties' correspondence. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

93. EPC admits only that the products at issue in this case were manufactured using an injection molding process, and that the molds had to be custom made for the parts. To the extent this allegation relates to whether TTI could order the Products from a different facility, EPC is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph 83 and therefore leaves TTI to its proofs. EPC denies as untrue the remaining allegations in this paragraph.

94. EPC admits only that on January 7, 2022, TTI sent to EPC a letter with the referenced subject line. EPC denies any inconsistent and unsupported allegations about this letter. EPC denies the remaining allegations as untrue.

95. EPC admits that TTI sent the January Notice, which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the January Notice. EPC denies as untrue the remaining allegations of this paragraph.

96. EPC admits that TTI sent the January Notice, which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the January Notice. EPC denies as untrue the remaining allegations of this paragraph.

97. EPC admits that TTI sent the January Notice and that the contents of the Notice speaks for itself. EPC denies any unsupported and inconsistent allegations. EPC denies as untrue the remaining allegations of this paragraph. EPC admits that TTI sent the January Notice, which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the January Notice. EPC denies as untrue the remaining allegations of this paragraph.

98. EPC admits that TTI sent the January Notice and that the contents of the Notice speaks for itself. EPC denies any unsupported and inconsistent allegations. EPC denies as untrue the remaining allegations of this paragraph. EPC admits that TTI sent the January Notice, which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the January Notice. EPC denies as untrue the remaining allegations of this paragraph.

99. EPC admits that sometime in March 2022, it sent a price increase request ("March Price Increase Request"), which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the March Price Increase Request. EPC denies as untrue the remaining allegations of this paragraph.

100. EPC admits it sent the March Price Increase Request and that the contents of the Notice speak for itself. EPC denies any allegations that are not supported by or inconsistent with

the March Price Increase Request. EPC denies as untrue the remaining allegations of this paragraph.

101.    EPC admits it received the March 24, 2022 communication and that the contents of the communication speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the March 24, 2022 communication. EPC denies as untrue the remaining allegations of this paragraph.

102.    EPC lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph and, therefore, EPC denies them. EPC denies any suggestion of wrongdoing or breach of the Agreement on its part.

### EPC's Attempt to Terminate the Agreement

103.    EPC admits only that on March 25, 2022, EPC's President and CEO Reza Kargarzadeh sent an email to TTI, the content of which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the March 25, 2022 email. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

104.    EPC admits only that on March 25, 2022, EPC's President and CEO Reza Kargarzadeh sent an email to TTI, the contents of which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the March 25, 2022 email. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

105.    EPC admits only that on March 25, 2022, TTI sent EPC a notice, the contents of which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the March 25, 2022 notice. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

106.    EPC admits only that on March 25, 2022, TTI sent EPC a notice, the content of which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with

the March 25, 2022 notice. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

<strong><u>EPC's Additional Price Increase Requests</u></strong>

107.     EPC admits only that on March 29, 2022, TTI sent EPC a letter ("March Letter"), which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the March Letter. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

108.     EPC admits only that on March 29, 2022, TTI sent EPC a letter ("March Letter"), which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the March Letter. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

109.     EPC admits only that on March 29, 2022, TTI sent EPC a letter ("March Letter"), which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the March Letter. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

110.     EPC admits only that on March 29, 2022, TTI sent EPC a letter ("March Letter"), which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the March Letter. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

111.     EPC admits only that on April 12, 2022, EPC's President and CEO Reza Kargarzadeh sent a response to TTI, the content of which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the April 12, 2022 response. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

112.     EPC denies as untrue the allegations in this paragraph.

113.    EPC admits only that on April 12, 2022, EPC's President and CEO Reza Kargarzadeh sent a response to TTI, the content of which speaks for itself.  EPC denies any allegations that are not supported by or inconsistent with the April 12, 2022 response.  EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

114.    EPC admits only that on April 12, 2022, EPC's President and CEO Reza Kargarzadeh sent a response to TTI, the content of which speaks for itself.  EPC denies any allegations that are not supported by or inconsistent with the April 12, 2022 response.  EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

115.    EPC admits only that TTI sent the "April Notice" on April 14, 2022, which speaks for itself.  EPC denies any allegations that are not supported by or inconsistent with the April Notice.  EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

116.    EPC admits only that TTI sent the "April Notice" on April 14, 2022, which speaks for itself.  EPC denies any allegations that are not supported by or inconsistent with the April Notice.  EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

117.    EPC admits only that TTI sent the "April Notice" on April 14, 2022, which speaks for itself.  EPC denies any allegations that are not supported by or inconsistent with the April Notice.  EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

118.    EPC admits only that TTI sent the "April Notice" on April 14, 2022, which speaks for itself.  EPC denies any allegations that are not supported by or inconsistent with the April

Notice. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

119. EPC admits only that TTI sent the "April Notice" on April 14, 2022, which speaks for itself. EPC denies any allegations that are not supported by or inconsistent with the April Notice. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

120. EPC admits only that it sought certain price increases for certain products after April 2022. However, EPC denies as untrue the remaining allegations in this paragraph, including any suggestion of wrongdoing or breach of the Agreement on its part.

121. EPC denies as untrue the allegations in this paragraph.

122. EPC denies as untrue the allegations in this paragraph.

123. EPC admits only that it is in receipt of the October 12, 2022 notice of termination of the Agreement from TTI. EPC denies the remaining allegations in this paragraph. EPC specifically denies any suggestion of wrongdoing or breach of the Agreement on its part.

## **FOR A FIRST CAUSE OF ACTION**
### **(Breach of Contract)**

124. EPC realleges and incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

125. EPC states that the allegations in this paragraph contain a legal conclusion as to which no response is required.

126. EPC denies as untrue the allegations in this paragraph.

127. EPC denies as untrue the allegations in this paragraph.

128. EPC denies as untrue the allegations in this paragraph.

129. EPC denies as untrue the allegations in this paragraph.

130.     EPC denies as untrue the allegations in this paragraph.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Contract Accompanied by a Fraudulent Act)

131.     EPC realleges and incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

132.     The Second Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

133.     The Second Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

134.     The Second Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

135.     The Second Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

136.     The Second Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

137.     The Second Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

138. The Second Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

## FOR A THIRD CAUSE OF ACTION
### (Fraud in the Inducement)

139. EPC realleges and incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

140. The Third Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

141. The Third Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

144. The Third Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

145. The Third Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

146. The Third Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

147.     The Third Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

148.     The Third Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

149.     The Third Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

150.     The Third Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

## FOR A FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

151.     EPC realleges and incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

152.     The Fourth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

153.     The Fourth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

154.    The Fourth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

155.    The Fourth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

156.    The Fourth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

157.    The Fourth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

158.    The Fourth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

159.    The Fourth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

## FOR A FIFTH CAUSE OF ACTION
### (Tortious Interference with Existing Contract)

160.    EPC realleges and incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

161. The Fifth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

162. The Fifth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

163. The Fifth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

164. The Fifth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

165. The Fifth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

166. The Fifth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

167. The Fifth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

## FOR A SIXTH CAUSE OF ACTION
### (Violation of the South Carolina Unfair and Deceptive Trade Practices Act)

168.     EPC realleges and incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

169.     The Sixth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

170.     The Sixth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

171.     The Sixth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

172.     The Sixth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

173.     The Sixth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

174.     The Sixth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

175. The Sixth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

## FOR A SEVENTH CAUSE OF ACTION
### (Quantum Meruit/Unjust Enrichment)

176. EPC realleges and incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

177. The Seventh Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

178. The Seventh Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

179. The Seventh Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

180. The Seventh Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

181. The Seventh Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

182.     The Seventh Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

183.     The Seventh Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

## FOR AN EIGHTH CAUSE OF ACTION
### (Set Off and Deductions)

184.     EPC realleges and incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

185.     The Eighth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

186.     The Eighth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

187.     The Eighth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

188.     The Eighth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time.  To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

189. The Eighth Cause of Action is subject to a pending partial motion to dismiss. Therefore, no answer to this allegation is required at this time. To the extent an answer is required, EPC denies the allegations in this paragraph as untrue.

190. EPC denies that TTI is entitled to any relief requested in the Prayer for Relief, including any subparagraphs thereof.

## AFFIRMATIVE DEFENSES

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Defendant EPC further responds to the Complaint by alleging the following defenses, avoidances, and affirmative defenses without assuming the burden of proof where such burden is otherwise on TTI pursuant to applicable substantive or procedural law. Because Counts II-VII of TTI's Complaint are subject to EPC's motion to dismiss, which was filed simultaneously with this Answer, these Affirmative Defenses are alleged only in response to the First Count of TTI's Complaint alleging a breach of contract. EPC reserves the right to assert additional separate defenses at such time as the Court makes a ruling on EPC's motion to dismiss as to Counts II-VIII of the Complaint. EPC also reserves the right to assert additional separate defenses as warranted by discovery and the factual developments in this case, and asserts the separate defenses, avoidances, and affirmative defenses herein in good faith to avoid waiver.

### First Affirmative Defense

1. TTI's claims against EPC are barred because TTI fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

2. TTI's claims against EPC are barred, in whole or in part, because TTI cannot prove all of the required elements of the claims brought against EPC.

### Third Affirmative Defense

3.    TTI's claims against EPC are barred by the terms of the express contract between the parties.

### Fourth Affirmative Defense

4.    TTI's claims against EPC are barred because, at all times, EPC fully performed its contractual obligations to TTI in good faith.

### Fifth Affirmative Defense

5.    TTI's claims against EPC are barred by the doctrine of unclean hands or *in pari delicto*.

### Sixth Affirmative Defense

6.    TTI's claims against EPC are barred by the doctrine of prevention.

### Seventh Affirmative Defense

7.    TTI's claims against EPC are barred because TTI was the first party to materially breach the applicable contracts.

### Eighth Affirmative Defense

8.    TTI's claims against EPC are barred due to its failure to mitigate damages.

### Ninth Affirmative Defense

9.    TTI's claims against EPC are barred by the doctrine of waiver.

### Tenth Affirmative Defense

10.    TTI's claims against EPC are barred by the doctrine of estoppel.

### Eleventh Affirmative Defense

11.    TTI's claims against EPC are barred because EPC is not a cause of TTI's damages.

## Twelfth Affirmative Defense

12.     TTI's claims against EPC are barred because TTI's damages are caused by conduct of third parties over whom EPC has no control.

EPC expressly reserves the right to assert such other affirmative defenses as become known through the course of discovery or further investigation.

## COUNTERCLAIM

Defendant/Counter-Plaintiff EPC states as follows for its Counterclaim against Plaintiff/Counter-Defendant TTI:

## PARTIES, JURISDICTION AND VENUE

1.     EPC is an Iowa corporation with its principal place of business in West Des Moines, Iowa.

2.     TTI is a Delaware corporation with its principal place of business in Anderson, South Carolina.

3.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds $75,000, and because this counterclaim arises out of the same transaction and occurrence that is the subject of TTI's Complaint against EPC.

4.     This Court has personal jurisdiction over TTI and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and because the parties have stipulated and agreed that disputes regarding the Agreement shall proceed in this Court.  (Exhibit 1, § 24.9).

5.     Jurisdiction and venue also are proper in this Court pursuant to Fed. R. Civ. P. 13 because CMI's claims are brought as a compulsory counterclaim in an action pending before the Court.

## STATEMENT OF FACTS

### EPC's Business

6.      EPC is the manufacturer of world-class plastic injection molded products. Since its founding in 1994, EPC has grown from one small facility with four injection molding machines to eighteen (18) locations with 520 machines.

7.      EPC is a registered minority company. Although EPC is based in North America, it ships its products internationally to at least twelve (12) different countries.

8.      EPC services automotive, appliances, consumer product and medical industries. In the automotive industry, EPC frequently functions as a Tier 1 and Tier 2 supplier to major automotive Original Equipment Manufacturers ("OEMs"). EPC also does business with major appliance brands, large companies in the medical industry, and large consumer product companies.

9.      With these various products, EPC has had many examples of successful major program launches of the size more significant than EPC's program with TTI.

10.      In September 2020, TTI approached EPC for injection molding work for the Ryobi Toolbox Program that TTI had with Home Depot, based on the recommendation from TTI's affiliate. The opportunity involved manufacturing modular storage products—a medium toolbox, small toolbox, small parts toolbox, rolling box, and open crate (collectively, the "Products")—for a contemplated launch in September/October 2021. EPC presented to TTI its standard company PowerPoint overview sharing EPC's history, footprint, major customers, and its injection molding capabilities.

11.      The same month, in September 2020, EPC provided an initial quote to TTI for the manufacture of several Products for the Ryobi Toolbox Program, based on the initial product design and specifications provided by TTI (the "September 2020 Quote").

12.     The September 2020 Quote was expressly based on the designated volumes, and indicated that volume fluctuation in excess of 10% would cause the change in price. The September 2020 Quote was also based on the regular work week, and did not include any overtime or premium costs. It expressly provided that prices of resin, a major component in EPC's products, were subject to change, and that the quote was also subject to change upon receipt of tooling.

13.     After EPC submitted the September 2020 Quote, the Products underwent significant changes, and EPC updated its quotes for the Products based, in part, on these modifications.

## The Master Supply Agreement

14.     On January 15, 2021, after several rounds of negotiations, EPC and TTI entered into the Master Supply Agreement (the "MSA"), which is attached as Exhibit 1.

15.     Pursuant to the MSA, EPC agreed to manufacture and assemble each Product in accordance with TTI's Specifications and requirements. (MSA, § 6.1.)

16.     The parties agreed to prices included in Schedule 1 to the MSA, and further agreed that in the event of product variations or adjustments, the future price agreements "shall be as mutually agreed by the Parties." (MSA, § 4.1.)

17.     The parties further agreed that prices would always be subject to adjustment based on the cost of resin raw material, based on Chemical Data, Inc.'s ("CDI's") published quarterly average index of resin raw material cost per pound. (MSA, § 4.1.) For any resin adjustment based on an increase in resin raw material cost, 100% of the applicable cost increase over the 5% increase was to be included in TTI's adjusted price as a price increase. (MSA, § 4.1(ii).)

18.     Although initially, the parties contemplated the resin price adjustment to occur quarterly, in early 2022, TTI agreed to adjust the prices due to increases in resin prices on a monthly basis.

19.    The MSA also required EPC to maintain minimum inventory levels, based on historical data concerning historical use, if available, and other information deemed relevant by the parties. (MSA, § 3.3.)

20.    Pursuant to the MSA, the drawings, specifications, tooling, molds, concepts, designs, and manufacturing processes relating to the Products belonged to TTI. (MSA, §§ 1.1, 14.1, 16.8.)

21.    The MSA contemplated a long-term relationship between the parties, with the initial term of three years and an evergreen clause providing for automatic one-year renewals thereafter. (MSA, § 21.1.) Either party had a right to terminate the MSA by giving a six-month prior written notice to the other party. (MSA, § 21.2.) The MSA could also be terminated for breach if a party fails to cure a breach within 30 days of the notice. (MSA, § 21.2.)

22.    The MSA also required EPC to maintain a minimum (and maximum) level of raw material and inventory for the Project, to ensure that EPC is ready to meet TTI's production needs. (MSA, § 3.3.)

23.    Both parties agreed to mitigate their costs upon any termination of the MSA. (MSA, § 21.4.)

### EPC Makes Significant Capital Investments
### In Preparation For TTI's Program

24.    EPC was excited for the opportunity to work with TTI on this project, which was described to EPC as a 10-15-year program. Although EPC has worked with many other large customers, this was an important opportunity for EPC, and EPC committed significant resources to ensure that the program was launched smoothly and on time.

25.    In preparation for this long-term partnership, EPC made capital expenditures of approximately $10 million into various items necessary to launch the TTI business.  These capital

expenditures included injection molding machines, assembly lines, workstations, screw driving and assembly systems. Some of the items purchased by EPC in preparation for the TTI launch were specific to the TTI business and cannot be used for other customers.

26. In addition, to accommodate TTI's business and allocate sufficient space for TTI's assembly and Products, EPC made a strategic decision to exit its blow-molding business and sell all equipment for that business, creating 100,000 square foot dedicated onsite warehouse for this project. As a result of doing so, EPC was able to dedicate significant space for the assembly and warehousing of TTI's Products.

27. Also in preparation for the launch of the program, in the summer of 2021, EPC began to hire and train staff.

28. EPC also incurred approximately $2.4 million in various launch costs.

### TTI Decides To Source The Tools From A Third-Party Vendor That Delivers The Tools Late And In Substandard Form

29. Although EPC offered to be responsible for design, build and management of tooling necessary to manufacture the Products, including of the injection molding machines, TTI decided to be responsible for design and order all the tools from a tool shop in Charlotte, North Carolina named Delta Mold, Inc. ("Delta Mold").

30. By not sourcing the tooling to EPC and choosing to involve Delta Mold in the process, TTI removed any ability on the part of EPC to control the quality and timeliness of the tooling. TTI, together with Delta Mold, became primarily responsible for delivery, quality, and timeliness of tooling.

31. EPC's engineers provided their tooling recommendations and guidelines to TTI and Delta Mold, so that the tooling enabled EPC to manufacture the Products promptly and to TTI's specifications. However, Delta Mold did not follow these guidelines, and TTI did not enforce

these guidelines with Delta Mold. TTI cut corners on the quality and quantity of tooling manufactured by Delta Mold to try to save the proverbial penny and due to its inexperience with injection molding.

32. Having standard-quality tooling was essential to EPC's ability to manufacture the Products to TTI's specifications, and to do so with reasonable expediency necessary to meet various Project deadlines.

33. Through no fault of EPC, Delta Mold was late on delivering the tools. The first complete set of tools was not delivered until November 2021—after the expected launch date, while the second set of tools did not arrive until around March 2022.

34. Typically, depending on the industry, tools come in anywhere from three (3) to eight (8) months pre-production.

35. Delta Mold's delay in delivering the tools made it impossible for EPC to deliver the Products to be made with those tools by the September-October 2021 launch deadline.

36. Even when Delta Mold's tools arrived, they were in sub-standard working condition. Among other ways in which Delta Mold's tools were of unacceptable quality, they were not capable of running efficiently and manufacturing the Products to TTI's specifications in standard manufacturing environment.

37. Delta Mold's tools slowed down the production process, and increased the expected standard cycle times by, in some cases, 150%.

38. In addition, despite EPC's suggestions, Delta Mold did not manufacture sufficient number of tools. For example, it made only one lid latch tool where each box required two latches, creating a bottleneck in EPC's manufacturing process.

39.     EPC understands that Delta Mold also held some of the tools back, pending a payment dispute with TTI.

40.     The tools manufactured by Delta Mold also contained unnecessary complexity, which resulted in weak mold constructions and led to fatigue failures of the mold.

41.     The sub-standard condition of Delta Mold's tools forced EPC's engineers to work around the clock to make some of the corrections and improvements necessary to run the subject tools properly and efficiently.  However, even as of today, the tools are not 100% production-ready.

42.     TTI's employees themselves recognized that the manufacturing delays that led to TTI missing the September-October 2021 launch date are not fairly attributable to EPC; rather, EPC "ha[s] significant invested interest to hit schedule" and "it's all on Delta."

**TTI Dramatically Changes Product Specifications, Opting For A More Expensive Design**

43.     After the MSA was signed in January 2021, the Products underwent significant design changes, which made the Products more expensive to manufacture.  As one example of the change in design, TTI increased durability requirements for the toolbox, which required the material supplier to introduce additives to reinforce product durability to meet the new standard. Whereas, EPC initially based its original price on the material that EPC used for similar products sold to a big box customer—the materials whose use TTI initially approved—TTI later updated its engineering specifications to include the cold impact requirement, which drove the material prices higher.

44.     TTI made other drastic changes to the specifications that made the Products more expensive to manufacture.  Among them, TTI chose a different type of resin manufactured by

35

Asahi Kasei, which was of a custom formulation produced by Asahi Kasei specifically for the Ryobi Program.

45.     Altogether, the Products went through close to twenty (20) revisions in a matter of months.  Many of these revisions made the Products more expensive to produce.  While EPC wanted to adjust the pricing with each individual change, it was told by TTI's employees in charge of the project to hold all pricing changes until the program was in production, at which point there would be a one-time true-up.

46.     Based on this direction from TTI, EPC did not make any pricing changes to its pricing until December 2021 when the products went into production. EPC provided revised pricing (for resin based on both design and material content changes) in August of 2021.  TTI asked EPC to hold price changes to December after launch and to complete true-up at that point.

47.     In December 2021, EPC adjusted the prices for the Products to account for drastic changes to product modifications, delays caused by sub-standard tooling, and increases in costs due to increase in the price of resin, among other factors.

48.     EPC was always completely transparent with TTI and readily revealed all of its costs and meager profit margins to TTI.

### TTI's Design Suffers From Multiple Flaws Requiring Drastic Changes

49.     In addition to tooling-related issues, the launch of the Program was made impossible due to multiple flaws in the TTI's design of the Products.

50.     EPC was a manufacture-to-print supplier, and relied on TTI's design to manufacture the Products.

51.     However, TTI's design was incomplete and non-functional, and had to be modified in significant respects.

52.     Some examples of the numerous design failures that the parties had to work through and that warranted modifications of specifications, making the Products more expensive and time-consuming to produce, included:

a.      Issues with the lock plate of the boxes where the lack of a bottom lead-in angle prevented the boxes from latching together until another part was added to the bottom side as well as the top of each lock;

b.      With respect to the bottom cover of the boxes, height control was a major issue that required several engineering changes, which in turn required multiple levels of mold modification;

c.      The hubs of the toolboxes were not sufficiently strong, and had to be enhanced and re-designed to be thicker, with additional fillet parts added to the support the hubs;

d.      Some of the resin types that TTI chose were incompatible when touching each other and created sliding surfaces; contrary to EPC's advice, TTI insisted on having the same types of resin for adjacent surfaces in order to capitalize on resin suppliers' volume discounts;

e.      The parties had to make multiple adjustments to the gasket seal in order to meet various required tests; and

f.      There were multiple issues with fit-up, interference, strength and inability to latch that caused the crates to pop open.

g.      There was also a last-minute change affecting the sliding plate and release where, instead of the sharp corner, TTI decided to make the corner round and to change the material on the sliding plates to avoid the bind-up material interlock condition.

h.      TTI also made last minute modifications to the handle, which had to be modified for proper thickness so that it could be molded.

53.     Some of the design failures became evident during the first engineering build event that took place in North Carolina in September 2021, in preparation for the promotional photo and video shoot that Home Depot did in advance of the Black Friday promotion.  As part of this engineering build event, the parties planned to build 50 units.  Each unit had to be individually hand-worked.

54.     The tooling samples used during this event were not production tools.  They were made mostly from silicon molded pieces glued together and some machined parts.  These were not the tools that could be used in a regular production process.

55.     Despite the small scale of the project and the individual attention paid to each part, TTI was only able to lock one of the 50 toolboxes that it assembled.  For the other toolboxes, TTI had to add jack screws and stop blocks to keep the lock plates in place in an attempt to show functionality of the toolbox for the marketing video shoot.

56.     The design of TTI's Products continued to change to ensure fit, function and workability of the Products, and included the material change at the eleventh hour, in the middle of December of 2021.

57.     Despite the obvious issues with TTI's product design, EPC went above and beyond to hand-deliver the components and the last-minute molded boxes to guarantee delivery to North Carolina in time to build boxes for the video shoot.

58.     Even when TTI missed the original October 2021 launch date, EPC worked tirelessly in an effort to support TTI's goal to make up the lost promotional sales.  EPC was running production seven days a week, 24 hours per day, including some holidays.

59.     EPC continued to hire additional staff to support the production.  After increasing operator wagers four times and exhausting all avenues to hire and attract the required labor, EPC worked with several temporary agencies to bring in as many potential production associates as possible to support the required assembly.  EPC paid some temporary agencies as high as $28.50/hour for this help, absorbing a part of these inflated wages on its own.

60.     As individuals within TTI itself acknowledged, EPC was extremely committed to this Project, and provided comprehensive unwavering support to make the Project successful.

**EPC Requests Price Increases To Which It Is Entitled Under The MSA**

61.     Since the time the MSA was entered into in January 2021, the following factors underlying EPC's pricing have changed:

    a.      Manufacturing location – the parties agreed to move the site of the Program from North Carolina to Michigan, to scale up the manufacturing;

    b.      Material selection – as described above, TTI opted for more expensive resin with certain additives to meet the cold impact requirement;

    c.      Product and component design and content – as described above, there were significant changes to the design of the Product;

    d.      Packaging concept – the parties agreed to a different packaging for the Products, which drove up EPC's costs; and

    e.      Palletization concept and shipping concepts – due to the change in shipping configurations, EPC spent weeks if not months in man hours re-palletizing the Products to these varying shipping layouts.

62.     Based on the parties' agreement that EPC would hold off on submitting incremental price increases during pre-production period, EPC periodically requested pricing adjustments prior to production, but were told by TTI to hold on pricing adjustments to December 2021. Accordingly, EPC did not request any price increases until December 2021, when the Products went in production.

63.     In December 2021, EPC adjusted the prices based on the vast changes to the Product specifications that TTI made since January 2021, when the MSA was executed.

64.     Thereafter, EPC sought price adjustments on a monthly basis, solely due to drastic increases in resin costs.

65.     TTI has approved EPC seeking resin-related price adjustments on a monthly, rather than quarterly, basis in writing.

66.     In some months, the adjustments actually lowered TTI's prices for the Products.

67.     However, in general, during 2021 and the first part of 2022, resin prices increased sharply, in line with increases in the price of oil. Based on the MSA's provision entitling EPC to seek price adjustments due to the price of resin, EPC's monthly price adjustments were justified.

**TTI Improperly Terminates the Agreement**

68.     On October 12, 2022, TTI abruptly terminated the parties' MSA effective immediately, without giving EPC the six-month notice required under the MSA to terminate as of right, and without giving EPC a written notice of the alleged breach and the opportunity to remedy such breach within thirty (30) days.

69.     Even if TTI gave EPC written notices complaining of price increases, TTI's complaints were not supported by the language of the MSA, which expressly allowed EPC to seek pricing adjustments due to change in specifications or increases in resin costs.

70.     This abrupt termination notice caught EPC by surprise, leaving EPC with millions of dollars in inventory on hand and in suppliers' possession on purchase orders due to lead time, which it acquired in order to be prepared to manufacture TTI's Products.

71.     EPC also is left with the various capital expenditure items, which it now cannot use for any other customers and whose cost it would fully recover if TTI did not terminate the MSA prematurely.

72.     As of the time of this filing, TTI has also failed to pay EPC millions of dollars for the previously shipped Products.

73.     EPC also has in its possession or has binding commitments to purchase approximately $5 million worth of inventory to meet its commitments to TTI, which were made prior to termination.

74.     EPC is losing approximately $150,000 per month in profits and will continue to do so until TTI's business is fully replaced.

75.     In reliance on the TTI business and opportunity, EPC also lost the ability to utilize its blow-molding business.  EPC was recently approached by a third party for the opportunity in the blow-molding business, but had to decline this opportunity.

76.     Despite all of TTI's material breaches of the MSA, TTI initiated this action on October 13, 2022, and now accuses EPC—not TTI—of breaching the MSA.

77.     TTI's accusations are false.  EPC's reputation has been damaged to the tune of many millions of dollars by TTI making false accusations against EPC.  TTI's false accusations have compromised future growth of EPC as a company and interfered with EPC's current customer relationships.

**TTI Has Failed to Make Timely Payments Pursuant to EPC's Invoices**

78.     Under the terms of the Agreement, TTI's payments for EPC's services were due "Net 120 effective from January 1, 2022." (MSA, § 4.2).

79.     TTI has failed to make payments on multiple invoices that are over one-hundred and twenty (120) days old.  A listing of the EPC's unpaid invoices is attached as Exhibit 2 to this Counterclaim, and all of these invoices are in TTI's possession.

80.     On December 17, 2021, EPC issued TTI Invoice Number RG.172786 for $14,345.76.

81.     On March 18, 2022, TTI paid $11,703.68, leaving a balance of $2,642.08 on Invoice Number RG.172786.

82.     On May 20, 2022, TTI paid $133.04, leaving a remaining balance of $2,509.04 on Invoice Number RG.172786.

83.     On July 11, 2022, TTI paid $303.94, leaving a remaining balance of $2,205.10 on Invoice Number RG.172786.

84.     On December 23, 2021, EPC issued TTI Invoice Number RG.172926 for $11,010.60.

85.     On July 15, 2022, TTI paid $3,980.80, leaving a balance of $7,029.80 on Invoice Number RG.172926.

86.     On January 15, 2022, EPC issued TTI Invoice Number RG.173362 for $635.12.

87.     On January 19, 2022, EPC issued TTI Invoice Number RG.174393 for $8,820.48.

88.     On May 20, 2022, TTI paid $4,410.24, leaving a remaining balance of $4,410.24 on invoice RG.174393.

89.     On January 24, 2022, EPC issued TTI Invoice Number RG.174675 for $6,878.88.

90.     On February 9, 2022, EPC issued TTI Invoice Number RG.175105 for $18,788.22.

91.     On February 13, 2022, EPC issued TTI Invoice Number RG.175164 for $34,848.00.

92.     On February 18, 2022, EPC issued TTI Invoice Number RG.174980 for $17,658.00.

93.     On February 20, 2022, EPC issued TTI Invoices Numbers RG.175229, RG.175243, and RG.175247 for a total amount of $81,098.40.

94.     On March 8, 2022, EPC issued TTI Invoice Number RG.175381 for $23,767.20.

95.     On March 21, 2022, EPC issued TTI Invoices Numbers RG.175468, RG.175469, RG.175470, and RG.175471 for a total amount of $142,732.80.

96.     On March 22, 2022, EPC issued TTI Invoices Numbers RG.175483 and RG.175484 for a total amount of $51,196.80.

97.     On March 31, 2022, EPC issued TTI Invoice Number RG.175551 for $30,237.76.

98.     On July 29, 2022, TTI paid $26,458.04, leaving $3,779.72 remaining to be paid on the March 31, 2022 invoice.

99.     On April 19, 2022, EPC issued TTI Invoice Number RG.175721 for $26,294.40.

100.    On April 25, 2022, EPC issued TTI Invoice Number RG.175770 for $34,435.20.

101.    On April 26, 2022, EPC issued TTI Invoice Number RG.175796 for $31,884.16.

102.    On April 28, 2022, EPC issued TTI Invoice Number RG.175809 for $31,884.16.

103.    On May 3, 2022, EPC issued TTI Invoice Number RG.175830 for $26,859.60.

104.    On May 6, 2022, EPC issued TTI Invoice Number RG.175862 for $20,332.80.

105.    On May 10, 2022, EPC issued TTI Invoice Number RG.175885 for $32,244.80.

106.    On May 19, 2022, EPC issued TTI Invoice Number RG.176031 for $20,332.80.

107.    On May 24, 2022, EPC issued TTI Invoice Number RG.176069 for $20,332.80.

108.    On June 6, 2022, EPC issued TTI Invoice Number RG.176080 for $18,799.20.

109.    On June 15, 2022, EPC issued TTI Invoice Number RG.176220 for $35,270.40.

110.    On June 16, 2022, EPC issued TTI Invoices Numbers RG.176227, RG.176228, and RG.176230 for a total amount of $67,798.00.

111.    On June 17, 2022, EPC issued TTI Invoices Numbers RG.176233, RG.176234, RG.176236, RG.176237, RG.176238, and RG.176239 for a total amount of $211,795.20.

112.    On June 20, 2022, EPC issued TTI Invoices Numbers RG.176235, RG.176248, RG.176249, RG.176250, RG.176251, RG.176252, RG.176253, and RG.176254 for a total amount of $216,604.80.

113.    On June 21, 2022, EPC issued TTI Invoices Numbers RG.176263, RG.176264, RG.176265, RG.176266, RG.176267, RG.176268, RG.176269, RG.176270, and RG.176271 for a total amount of $318,348.

114. On June 22, 2022, EPC issued TTI Invoice Number RG.176275 for $20,361.60.

115. On June 23, 2022, EPC issued TTI Invoices Numbers RG.176290 and RG.176291 for a total amount of $130,521.60.

116. On June 23, 2022, EPC issued TTI Invoice Number RG.176292 for $35,270.40.

117. On October 20, 2022 TTI paid $24,623.60, leaving a remaining balance of $10,646.80 on Invoice Number RG.176292.

118. On June 23, 2022, EPC issued TTI Invoice Number RG.176293 for $20,361.60.

119. On October 20, 2022 TTI paid $14,215.20, leaving a remaining balance of $6,146.40 on Invoice Number RG.176293.

120. On June 23, 2022, EPC issued TTI Invoice Number RG.176294 for $20,361.60.

121. On October 20, 2022, TTI paid $14,215.20, leaving a remaining balance of $6,146.40 on Invoice Number RG.176294.

122. On June 23, 2022, EPC issued TTI Invoice Number RG.176295 for $27,075.60.

123. On October 20, 2022, TTI paid $18,902.50, leaving a remaining balance of $8,173.10 on Invoice Number RG.176295.

124. On June 23, 2022, EPC issued TTI Invoice Number RG.176296 for $27,075.60.

125. On October 20, 2022, TTI paid $18,902.50, leaving a remaining balance of $8,173.10 on Invoice Number RG.176296.

126. On June 23, 2022, EPC issued TTI Invoice Number RG.176297 for $27,075.60.

127. On October 20, 2022, TTI paid $18,902.50, leaving a remaining balance of $8,173.10 on Invoice Number RG.176297.

128. On June 23, 2022, EPC issued TTI Invoice Number RG.176298 for $27,075.60.

129.     On October 20, 2022, TTI paid $18,902.50, leaving a remaining balance of $8,173.10 on Invoice Number RG.176298.

130.     On June 24, 2022, EPC issued TTI Invoices Numbers RG.176304, RG.176305, RG.176306, RG.176307, RG.176308, RG.176309, RG.176310, RG.176311, and RG.176312 for a total amount of $283,346.40.

131.     On June 27, 2022, EPC issued TTI Invoices Numbers RG.176317, RG.176318, RG.176320, and RG.176321 for a total amount of $111,264.00.

132.     On June 28, 2022, EPC issued TTI Invoices Numbers RG.176327, RG.176328, RG.176329, and RG.176330 for a total amount of $147,968.40.

133.     On June 29, 2022, EPC issued TTI Invoices Numbers RG.176319, RG.176331, RG.176332, RG.176333, RG.176334, and RG.176335 for a total amount of $203,600.40.

134.     On June 30, 2022, EPC issued TTI Invoices Numbers RG.176338, RG.176339, RG.176340, RG.176341, RG.176342, and RG.176343 for a total amount of $203,600.40.

135.     On July 1, 2022, EPC issued TTI Invoices Numbers RG.176346, RG.176347, RG.176348, RG.176349, RG.176350, and RG.176351 for a total amount of $161,179.20.

136.     On July 5, 2022, EPC issued TTI Invoices Numbers RG.176352, RG.176353, RG.176354, RG.176355, RG.176356, and RG.176359 for a total amount of $239,174.40.

137.     On July 6, 2022, EPC issued TTI Invoices Numbers RG.176369, RG.176370, RG.176371, RG.176372, RG.176373, RG.176374, RG.176375 for a total amount of $188,042.40.

138.     On July 7, 2022, EPC issued TTI Invoices Numbers RG.176380, RG.176381, RG.176382, RG.176383, RG.176384, and RG.176385 for a total amount of $164,937.60.

139.     On July 8, 2022, EPC issued TTI Invoices Numbers RG.176387, RG.176388, RG.176389, RG.176390, RG.176391, and RG.176392 for a total amount of $161,179.20.

140. On July 11, 2022, EPC issued TTI Invoices Numbers RG.176398, RG.176399, RG.176400, RG.176401, RG.901402, RG.901403, RG.901404, RG.901405, RG.901406 for a total amount of $153,543.04.

141. On July 12, 2022, EPC issued TTI Invoices Numbers RG.176406, RG.176407, RG.176408, and RG.176409 for a total amount of $107,452.80.

142. On July 13, 2022, EPC issued TTI Invoices Numbers RG.176412, RG.176413, RG.176414, RG.176415, and RG.176416 for a total amount of $158,443.20.

143. On July 14, 2022, EPC issued TTI Invoices Numbers RG.176422, RG.176423, RG.176424, RG.176425, and RG.176426 for a total amount of $134,316.00.

144. On July 15, 2022, EPC issued TTI Invoices Numbers RG.176430, RG.176431, RG.176432, RG.176433, and RG.176434 for a total amount of $174,528.00.

145. On July 18, 2022, EPC issued TTI Invoices Numbers RG.176451, RG.176452, RG.176453, RG.176454, and RG.176455 for a total amount of $158,443.20.

146. On July 19, 2022, EPC issued TTI Invoices Numbers RG.176462, RG.176463, RG.176464, RG.176465, and RG.176466 for a total amount of $134,316.00.

147. On July 20, 2022, EPC issued TTI Invoices Numbers RG.176472, RG.176473, RG.176474, RG.176475, and RG.176476 for a total amount of $174,528.00.

148. On July 21, 2022, EPC issued TTI Invoices Numbers RG.176477, RG.176478, RG.176479, RG.176480, and RG.176481 for a total amount of $134,316.00.

149. On July 22, 2022, EPC issued TTI Invoices Numbers RG.176486, RG.176487, RG.176488, RG.176489, and RG.176490 for a total amount of $158,443.20.

150.    All of the aforementioned invoices were issued to TTI, but as of November 22, 2022, over $10 million in these invoices remains unpaid by TTI, including $5,065,477.08 in invoices that are more than 120 days past due.

### TTI Induces EPC to Continue Shipping Products By Making False Promises of Payment, But Instead Withholds Payment Of More Than $10 Million Due EPC

151.    On October 25, 2022, following TTI's October 12, 2022 notification of termination, EPC, through its counsel Foley & Lardner LLP, requested confirmation that TTI wanted EPC to continue shipping the Products in accordance with TTI's releases during the months of October and November 2022, and that TTI intended to pay EPC for any Products shipped in October and November and during the prior months per the pay terms in the parties' Agreement.

152.    TTI, through its counsel Nelson Mullins Riley & Scarborough LLP, responded on October 28, 2022, confirming that:

a.    TTI has not canceled any binding purchase orders under the Agreement;

b.    EPC should ship products according to the binding purchase orders; and

c.    TTI will continue to pay for all binding purchase orders according to all terms and conditions of the Agreement, including but not limited to the net 120 payment terms set forth in Section 4.2 of the Agreement.

153.    Although TTI vaguely reserved the right to exercise setoff rights, it did not actually exercise that right at the time.  Rather, it inquired regarding Accounts Receivable balances over 90 days "so TTI can review."

154.    In reliance on TTI's representation, EPC continued making shipments of the Products to TTI to TTI's releases.

155.    Notwithstanding the above communication, TTI has not made any additional payment to EPC on any of the outstanding invoices.

156. Instead, on November 23, 2022, after having received all the Products it apparently needed, TTI sent EPC a letter for the first time indicating that it would be not be issuing any payments on more than $10 million in outstanding accounts receivable, and would not be issuing any payment on any additional sums due or which may become due to EPC pursuant to the MSA.

157. On November 30, 2022, in response to TTI's November 23, 2022 correspondence, EPC asked TTI to provide detailed breakdown of "TTI's total damages and costs" that are referenced in TTI's November 23 correspondence.

158. TTI refused to provide any breakdown of its claim to more than $10 million in damages, noting that it does "not see the value of engaging in extensive letter-writing campaign in this matter."

159. TTI's brazen and unjustified withholding of more than $10 million in EPC's accounts receivable, without any explanation or substantiation, placed EPC in difficult financial condition.

## COUNT I – BREACH OF CONTRACT

160. EPC incorporates by reference its allegations stated in the preceding paragraphs as if set forth in full herein.

161. The MSA requires TTI to:

    a. Pay EPC for the Products that EPC manufactures at the prices specified in the MSA. However, if the design and specifications of the Products change, future price agreements for product variations and other adjustments to the Products "shall be as mutually agreed by the parties," (MSA, § 4.1);

    b. Adjust the pricing for the Products based on an increase in resin raw material costs over five percent—with TTI agreeing in writing to adjust the prices to account for changes in the price of resin on a monthly basis, (MSA, § 4.1);

    c. Provide at least a six-month notice of termination without cause, and at least a 30-day notice of termination with cause, (MSA, § 21.2);

   d.  Pay EPC on its invoices within 120 days, (MSA, § 4.2); and

   e.  Otherwise act in good faith.

  162. The MSA also requires EPC to maintain minimum inventory levels (MSA, § 3.3), and to seek TTI's guidance as to what to do with TTI's Products and TTI Property post-termination (MSA, § 21.3). The MSA therefore contemplates that TTI would reimburse EPC for inventory on hand in the event of termination.

  163. EPC has fully performed its obligations under the Agreement.

  1544. TTI has materially breached the Agreement by its conduct described above, including, but not limited to:

   a.  Terminating the MSA without cause and without proper notice;

   b.  Refusing to grant and otherwise objecting to EPC's legitimate price adjustments expressly contemplated in the MSA;

   c.  Refusing to pay EPC's invoices within 120 days of submission;

   d.  Refusing to pay for EPC's capital expenditures, inventory on hand and inventory commitments made prior to termination, and refusing to pay for other components of EPC's obsolescence claim and other damages that EPC incurred when TTI improperly terminated the MSA; and

   e.  Otherwise failing to act in good faith.

  165. As a result of TTI's breaches, EPC has suffered damages in excess of $75,000.

## COUNT II – DECLARATORY JUDGMENT

  166. EPC incorporates by reference its allegations stated in the preceding paragraphs as if set forth in full herein.

  167. There is a dispute between EPC and TTI regarding whether TTI had the right to terminate the MSA based upon EPC's price increases.

  168. EPC is entitled to a declaratory judgment that TTI had no right to terminate the MSA based upon EPC's price increases, and thus TTI breached the Agreement by terminating.

169.     There is also a dispute between EPC and TTI regarding whether EPC has the right to recover various significant capital investments, as well as its current inventory for the TTI business and other components of the typical obsolescence claim, in the event the termination were allowed to stand.

## COUNT III – ACCOUNT STATED

155.     EPC incorporates by reference its allegations stated in the preceding paragraphs as if set forth in full herein.

171.     After EPC issued the Invoices to TTI as described in this Complaint and as summarized in Exhibit 2 to this Complaint, TTI did not timely dispute the amounts due in the invoices, and indeed, agreed to continue to pay for all purchase orders according to all terms and conditions of the Agreement, including but not limited to the net 120 payment terms set forth in Section 4.2 of the Agreement.

172.     Notwithstanding this, and despite EPC's repeated attempts at collecting payment, TTI has failed to pay on the outstanding invoices, leaving a total amount due and owing of $5,065,477.08 that is 120 days past due, and a total amount due and owing of $10,120,369.46 on all of the Invoices.

173.     EPC is also entitled to interest at the rate of eight and three-fourths percent per annum on the accounts stated under South Carolina law.

## COUNT IV – ACTION FOR AN ACCOUNTING

174.     EPC incorporates by reference its allegations stated in the preceding paragraphs as if set forth in full herein.

175.      EPC is entitled to an accounting regarding TTI's unilateral exercise of its setoff rights under the MSA and South Carolina law, in an amount exceeding $10 million.

176.     An accounting is necessary to determine the proper amount of any alleged setoff

rights claimed by TTI under the MSA and South Carolina law.

177. EPC requested TTI to provide accounting of its set-off by letter of November 30, 2022, but TTI flatly refused to provide it.

177. As such, EPC respectfully requests the Court to order TTI to provide an accounting of its unpaid obligations, including interest, which it asserts as part of its alleged set-off rights.

**WHEREFORE**, Defendant/Counter-Plaintiff EPC, having fully answered the allegations of the Complaint, respectfully requests that this Court enter an Order:

a. Dismissing TTI's claims with prejudice;

b. Granting judgment in favor of EPC and against TTI;

c. Ordering TTI to provide accounting of its purported "setoff" claim;

d. Awarding EPC all damages as a result of EPC's reliance on TTI's false assurances and misrepresentations;

e. Awarding EPC punitive damages allowed under the law;

f. Awarding EPC all attorney fees and costs permissible under the law; and

g. Affording EPC all such other relief as this Court deems just and proper.

### JURY TRIAL REQUEST

Defendant/Counter-Plaintiff EPC respectfully requests trial by jury as to any claims and issues in TTI's Complaint against EPC and EPC's Counterclaim against TTI so triable.

*[Signature Block on the Following Page]*

Respectfully submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

*/s/ Christopher B. Major*

Christopher B. Major, Fed ID No. 9382
One North Main, 2nd Floor
Greenville, SC 29601
Telephone:  864.240.3200
Facsimile:  864.240.3300
Email:  cmajor@hsblawfirm.com

and

**FOLEY & LARDNER LLP**

Vanessa L. Miller (admitted *pro hac vice*)
Irina Kashcheyeva (admitted *pro hac vice*)
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone:  313.234.7100
Email:  vmiller@foley.com
Email:  ikashcheyeva@foley.com


*Attorneys for Defendant, Engineered Plastic Components, Inc.*

Dated:  December 28, 2022