**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | |
|---|---|
| TTI Consumer Power Tools, Inc. f/k/a One World Technologies, Inc. d/b/a Techtronic Industries Power Equipment,<br><br>        Plaintiff/Counter-Defendant,<br><br>vs.<br><br>Engineered Plastic Components, Inc.,<br><br>        Defendant/Counter-Plaintiff. | Civil Action No. 8:22-cv-04085-JDA<br><br>**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TO COMPEL AN ANSWER** |

Pursuant to Fed. R. Civ. P. 37(a), Plaintiff/Counterclaim-Defendant TTI Consumer Power Tools, Inc. ("TTI") moves the Court to compel Defendant/Counterclaim-Plaintiff Engineered Plastic Components, Inc. ("EPC") to provide a more definitive answer to TTI's Third Interrogatories Nos. 3, 4, 8, and 11 and to produce documents in response to TTI's Fifth Requests for Production No. 5.

**PRELIMINARY STATEMENT**

TTI is entitled to conduct discovery into issues relevant to its case. Five months ago, TTI issued interrogatories requiring EPC to identify facts supporting certain claims and defenses and requiring EPC to demonstrate that it has, in fact, attempted to mitigate its damages, rather than using its claim for "capital expenditures" damages litigation as an attempt to upgrade its machinery on TTI's dime. Likely cognizant that its claims and defenses are unsupported by any salient facts, EPC has refused to give clear answers to TTI's interrogatories. In some cases, EPC has attempted to incorporate by reference deposition testimony, essentially telling TTI where TTI might find the answer to its interrogatories rather than providing the definitive answer the Federal Rules of Civil Procedure require. EPC must provide a more definitive answer to these interrogatories.

1

EPC has also refused to produce the notes of its corporate representative, Reza Kargarzadeh, even though the representative testified that he used the notes to refresh his recollection in preparation for testifying on behalf of EPC in its Rule 30(b)(6) deposition, brought the notes with him to the deposition, and, in fact, offered to produce them to TTI. EPC's objection that the notes are privileged is without merit. Based on Mr. Kargarzadeh's testimony, the notes reflect his own thoughts and not the opinions of counsel. Even if the notes were privileged, EPC has waived this privilege by failing to produce a privilege log four months after first asserting the privilege.

Despite TTI's best efforts to resolve these disputes, it now seeks Court intervention to compel EPC to provide the information to which TTI is entitled.

## BACKGROUND

TTI is a manufacturer of power tools and outdoor products. EPC is a manufacturer of plastic injection molded products. On July 15, 2021, TTI and EPC entered into an MSA under which EPC agreed to manufacture, supply, and sell modular storage products to TTI (the "Products"), which TTI would then supply to Home Depot (these efforts are hereinafter referred to as the "Project"). Because neither EPC nor TTI had the capability to create the dies used to mold raw resin into plastic parts (often referred to as "tooling"), EPC recommended that TTI engage Delta Mold, a tooling manufacturer that EPC had worked with on prior projects. Due in large part to EPC's failure to supply Delta Mold with critical information about its manufacturing facilities in a timely manner, the tooling was not delivered on time, which impacted EPC's ability to meet the planned October 2021 initial launch of the Products in Home Depot stores.

Other issues plagued the Project. Among other things, the MSA required EPC to maintain a certain quantity of raw material and finished products at all times. It became apparent early in

the Project that EPC did not have sufficient warehouse space to meet this obligation, impacting EPC's ability to meet its production obligations and breaching the MSA.  Because of EPC's failure to acquire adequate warehousing space for raw material and finished products, TTI was forced to secure a warehouse from a third party at its own expense.  TTI seeks damages in this litigation for the costs of acquiring the warehouse space which, under the terms of the MSA, EPC should have maintained.

As production finally began, EPC coerced TTI into paying significantly higher prices than the Parties had initially agreed to by threatening to cease shipment of the Products, which would have caused to TTI to default on its obligations to its customer, Home Depot.  Due to EPC's repeated failure to meet its obligations under the MSA and its coercive business practices, TTI terminated the MSA in October 2022 and began using new suppliers to manufacture the Products.

EPC has asserted a number of defenses and counterclaims.  EPC contends that any delays related to Delta Mold are attributable solely to TTI, because, on the advice of EPC's VP of Sales James Rank, TTI engaged Delta Mold directly rather than engaging Delta Mold through EPC and paying a 15% markup to EPC.  EPC also claims to have had adequate warehousing space to comply with its obligations under the MSA.  EPC also contends that even though the MSA does not require TTI to exclusively manufacture the Products using EPC, TTI had a duty to disclose its intention to switch to other suppliers prior to terminating the MSA for cause in October 2022.  In fact, without a shred of evidence in support, EPC claims that from the beginning of the Project TTI intended to use EPC for an initial run of the Product and then switch to overseas suppliers for mass production, despite the significant duplicative costs that such a strategy would entail.  Based on these spurious allegations, EPC seeks damages for its "capital expenditures" incurred in connection with the Project, including, among other things, presses allegedly purchased for the Project.

Both Parties have taken depositions including, on January 19, 2024, the deposition of EPC under Rule 30(b)(6). Reza Kargarzadeh, EPC's corporate representative, brought handwritten notes with him to the deposition, which he stated he had prepared in advance of the deposition to help refresh his recollection regarding the deposition topics. Although Mr. Kargarzadeh offered to share his notes with TTI's counsel, EPC's counsel refused.

TTI served its Fifth Requests for Production (the "Requests") and its Third Interrogatories (the "Interrogatories") on EPC on March 13, 2024. (Plaintiff's Fifth Set of Requests for Production to Defendant, attached hereto as Ex. A; Plaintiff's Third Set of Interrogatories to Defendant, attached hereto as Ex. B.) EPC provided its Responses and Objections to both the Requests and the Interrogatories on April 12, 2024.[1]

EPC asserted numerous improper objections to TTI's discovery requests, which TTI promptly raised with EPC's then counsel Foley & Lardner LLP. (S. Young letter re EPC's Response to TTI's Fifth Requests for Production and Third Interrogatories, attached hereto as Ex. C.) Due to the withdrawal of EPC's lead counsel, Foley & Lardner LLP, TTI and EPC agreed to toll the deadline for TTI to bring a motion to compel regarding EPC's deficient responses. (C. Major email of April 25, 2024, attached hereto as Ex. D.) EPC served Amended Answers to TTI's Third Set of Interrogatories and Fifth Requests for Production on June 12, 2024. These amended answers failed to address the deficiencies in EPC's original responses, which TTI noted via correspondence of June 13, 2024. (S. Young letter of June 13, 2024 regarding Amended Discovery Responses, attached hereto as Ex. E.) In accordance with D.S.C. Local Civ. R. 7.02 and Fed. R. Civ. P. 37(a), the parties met and conferred on June 18, 2024 but were unable to resolve their

---

[1] For purposes of this motion, the discovery responses at issue are contained in EPC's [Second] Supplemental Answers to TTI's Fifth Requests for Production and [Second] Supplemental Answers to TTI's Third Interrogatories, which are attached hereto as Exs. G and H, respectively.

disagreements. The Parties continued to exchange correspondence regarding EPC's deficient responses and extended the deadline for EPC to file supplemental responses to July 26, 2024. (B. Knowlton email of July 19, 2024, attached hereto as Ex. F.) EPC served Amended Responses to TTI's Fifth Requests for Production and Third Interrogatories on July 26, 2024. (EPC's [Second] Supplemental Answers to TTI's Fifth Requests for Production, attached hereto as Ex. G; EPC's [Second] Supplemental Answers to TTI's Third Interrogatories, attached hereto as Ex. H.) However, these Amended Responses failed to meaningfully address the issues raised in the Parties' prior correspondence and meet and confer. Throughout this process, the parties agreed to extend the deadline for TTI to move to compel, most recently extending the deadline on August 19, 2024. (B. Knowlton email of August 19, 2024, attached hereto as Ex. I.) This motion is therefore timely under D.S.C. Local Civ. R. 37.01(A). The parties are now at an impasse, and these issues are ripe for adjudication.

## GOVERNING LAW

Under Fed. R. Civ. P. 26(b)(1) "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts interpret Rule 26 broadly, so that no party is denied "information reasonably necessary to afford a fair opportunity to develop his or her case." *State Farm Fire & Cas. Co. v. Lang*, No. CV 2:21-1063-RMG, 2022 WL 18584199, at *1 (D.S.C. Oct. 24, 2022). *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992) ("[T]he discovery rules are given 'a broad and liberal treatment.'"). "[I]nformation is relevant, and thus discoverable, if it bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Nix v. Holbrook*, No. CIV.A. 5:13-02173, 2015 WL 791213, at *2 (D.S.C. Feb. 25, 2015) (quotations omitted and cleaned up); *see also*, Brown-*Thomas v. Hynie*, No. 1:18-CV-

02191-JMC, 2021 WL 651014, at *2 (D.S.C. Feb. 19, 2021) ("A discovery request is relevant 'if there is any possibility that the information sought might be relevant to the subject matter of [the] action.'")

In determining whether a request is proportional, courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"[T]he party objecting has the burden of showing the discovery should not be allowed and doing so through 'clarifying, explaining and supporting its objections with competent evidence.'" *Brown-Thomas v. Hynie*, No. 1:18-CV-02191-JMC, 2021 WL 651014, at *2 (D.S.C. Feb. 19, 2021). *See also*, *S.C. State Conf. of NAACP v. Alexander*, No. 321CV03302TJHMBSRMG, 2022 WL 2452319, at *3 (D.S.C. July 5, 2022) ("The party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion.")  The party objecting to a discovery request on the basis of burden must "allege specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence." *Gainey v. BlueCross BlueShield of South Carolina*, No. 3:09-986-JFA-JRM, 2010 WL 11534418 at *2 (D.S.C. Mar. 17, 2010) (citations omitted).

**ARGUMENT**

**I.     EPC Must Provide a More Definitive Response to Interrogatories 3, 4, 8, and 11.**

Interrogatories 3, 4, 8, and 11 seek relevant information regarding the claims and defenses EPC has asserted and the damages it seeks in this litigation.  Although EPC has not withheld

6

information based on its meritless objections,[2] EPC shas provided evasive responses that do not answer—sometimes fully, other times at all—the questions TTI has posed. TTI is entitled to a full response to these interrogatories.

### A. EPC's Response to Interrogatory 3 is Incomplete.

Interrogatory 3 requires EPC to:

> Identify all facts and circumstances supporting Your contention that TTI had a duty to disclose to EPC its intention to switch suppliers, as alleged in Paragraph 275 of Your Amended Counterclaim, and identify all supporting Documents.

Interrogatory 3 is directly relevant to EPC's claim that TTI defrauded EPC by failing to disclose to EPC that TTI intended to switch suppliers from EPC to other suppliers better able to meet their production and pricing obligations to TTI. If EPC cannot demonstrate that TTI had a duty to disclose information to EPC regarding TTI's plan to change suppliers, then EPC's fraud claim fails. Accordingly, Interrogatory 3 is directly relevant to EPC's fraud claim and thus properly the subject of discovery.

EPC's response to Interrogatory 3 is incomplete. Although EPC gives its high-level theory that EPC had a duty to disclose its intent to switch suppliers, the only facts that EPC actually identifies in its response relate to an abandoned plan to utilize multiple overseas suppliers from the start of the Project, TTI's use of other overseas suppliers for other projects, and the fact that TTI did not notify EPC in advance of its plan to switch suppliers. EPC has failed to identify any facts that address whether TTI had a duty to disclose to EPC its intention to switch suppliers.

TTI respectfully requests that the Court order EPC to provide a more definitive answer to Interrogatory 3.

---

[2] Although EPC asserts numerous boilerplate objections to each interrogatory, during the meet and confer process EPC's counsel represented that EPC has not withheld any information on the basis that the information is equally accessible to TTI, that the language of the interrogatories was vague and ambiguous, or that the interrogatories sought legal conclusions.

### B. EPC's Response to Interrogatory 4 Dodges the Question.

Interrogatory 4 requires EPC to:

Identify all representations EPC made to TTI regarding the difference in the services that EPC would have provided TTI if TTI had engaged EPC directly to provide tooling for the Project as compared to the services EPC would have provided—and in fact did provide—TTI if TTI engaged Delta Mold to provide tooling for the Project, including who at EPC made the representation, to whom at TTI the representation was made, when and how each representation was made, and the Documents reflecting each such representation.

The information sought by Interrogatory 4 is relevant. Because neither EPC nor TTI have the capability to manufacture the tooling for the Project, EPC introduced TTI to Delta Mold, a tooling manufacturer with which EPC had worked on projects for other customers. EPC gave TTI a choice: TTI could engage Delta Mold directly, or EPC could engage Delta Mold on TTI's behalf. The Parties differ greatly on how this choice was to impact EPC's involvement with Delta Mold. TTI contends that EPC represented that the only difference between the two choices is that if EPC engaged Delta Mold on TTI's behalf EPC would charge TTI a 15% markup. If TTI engaged Delta Mold, EPC represented that it would provide the same support to the tooling project and hold itself to the same standards as if EPC engaged Delta Mold directly. As part of EPC's strategy of blaming anyone but itself for its inability to produce the Link Storage Products on time and at an economically viable cost, EPC contends that because TTI did not pay the "tooling management fee"—a term created post-hoc by EPC's expert witness—EPC was not required to support Delta Mold and is not, therefore, responsible for any delays in the tooling process, even those delays are directly attributable to EPC's failure to provide key information to Delta Mold in a timely manner. Interrogatory 4 is directly relevant to the Parties' dispute over the importance of the purported "tooling management fee" and therefore is properly the subject of discovery.

EPC's initial and supplemental responses to Interrogatory 4 fail to address the interrogatory or remedy the deficiencies in EPC's initial response. EPC's initial response states that EPC's

8

James Rank "advised TTI's employee Reid Cheatham that there would be a 15% tooling management fee for EPC to manage the tooling directly." (Ex. B, at 11.) Critically, EPC fails to state whether Mr. Rank disclosed what services EPC would provide in exchange for this 15% "tooling management fee" and how those services would differ from the services EPC would provide in absence of the fee. EPC attempts to cure this deficiency by referring TTI to the testimony of its proposed expert, Chris Thoms about "what a tooling management fee *typically* covers." (*Id.* (emphasis added).) Similarly, EPC's supplemental answer purports to describe the services that Reza Kargarzadeh and Jeremy Wille, EPC's CEO and CFO, respectively, consider a "tooling management fee" to cover. However, none of these statements answer Interrogatory 4, which asks what EPC told TTI would be covered by the "tooling management fee." The opinions of EPC's expert, engaged after the initiation of this litigation, cannot form the basis of EPC's representations to TTI prior to engaging Delta Mold early in the Project. Nor does EPC contend that Messrs. Kargarzadeh and Wille communicated their understanding of the services covered by the "tooling management fee" to TTI during the Project. As such, EPC's response fails to answer Interrogatory 4.

TTI respectfully requests that the Court order EPC to provide a more definitive answer that specifically addresses the information requested by Interrogatory 4 or plainly state that EPC did not disclose to TTI that EPC would provide different services to TTI if TTI engaged Delta Mold directly than EPC would provide if EPC engaged Delta Mold on TTI's behalf.

### C.     EPC's Response to Interrogatory 8 Impermissibly Incorporates Deposition Testimony Rather Than Providing a Proper Response.

Interrogatory 8 requires EPC to:

Identify all facts and circumstances supporting Your contention that EPC provided adequate warehousing and storage space for the Project, as alleged in Paragraph 121 of Your Amended Counterclaim, and identify all Documents in support.

9

The information sought by this interrogatory is relevant to TTI's claim that EPC breached the Master Supply Agreement by failing to provide adequate warehousing space for raw materials and finished products, leading TTI to expend more than $6 million in acquiring supplemental warehousing space from a third-party provider. Instead of answering the interrogatory, EPC refers TTI to "the depositions of various EPC and TTI employees" and identifies sections of four depositions "[a]t which this issue was . . . discussed." Ex. B, at 16–17.

EPC's failure to directly answer Interrogatory 8 frustrates the interrogatory's value as a contention interrogatory. As District Judge Thomas Schroeder recognized, such interrogatories "serve an important purpose in helping to discover facts supporting the theories of the parties' and to 'narrow and sharpen the issues thereby confining discovery and simplifying trial preparation.'" *Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, 297 F. Supp. 3d 547, 556 (D.S.C. 2018) (quoting *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012)). By telling TTI where it *might* find a response to its interrogatory, rather than definitively answering the interrogatory, EPC frustrates this purpose.

To fully answer this interrogatory, EPC must speak for itself and take an affirmative position on the topic of the interrogatory, rather than referring to deposition testimony. *See Smith v. Trawler Capt. Alfred, Inc.*, No. 2:12-CV-2866-DCN, 2014 WL 1912067, at *2 (D.S.C. May 13, 2014) ("An answer to an interrogatory that simply incorporates . . . a deposition is therefore unresponsive."). None of the deponents whose testimony EPC referenced spoke on behalf of EPC. In fact, one deponent is a former TTI employee. Moreover, EPC does not even attempt to incorporate deposition testimony by reference. EPC merely states that the "issue was also discussed" during the referenced depositions. This is no answer.

TTI respectfully requests that the Court order EPC to provide a more definitive answer to

Interrogatory 8 by affirmatively answering the question asked instead of simply referencing deposition testimony.

### D.     EPC's Response to Interrogatory 11 Omits Critical Information.

Interrogatory 11 requires EPC to:

Identify all capital expenditures EPC made in relation to the Project, including but not limited to those capital expenditures alleged in Paragraph 39 of Your Amended Counterclaim, and for each capital expenditure describe in detail the nature of the capital expenditure, the U.S. dollar value of the capital expenditure, the specific reason EPC incurred the capital expenditure, the entity from which EPC acquired the capital expenditure, the current location of the capital expenditure, whether EPC is currently using the capital expenditure to produce products for any client, whether at any time between the termination of the MSA and the current date EPC has used the capital expenditure to produce products for any client, and any efforts EPC has undertaken to sell the capital expenditure.

In response, EPC incorporated by reference a spreadsheet that purports to contain all EPC's "capital equipment purchased for [the] TTI project." However, this list fails to provide all information responsive to TTI's interrogatory. Namely, the document does not specify the following information requested in the interrogatory for any capital expenditure listed in the referenced spreadsheet:

- The current location of the capital expenditure,

- Whether EPC is currently using the capital expenditure to produce products for any client, whether at any time between the termination of the MSA and the current date EPC has used the capital expenditure to produce products for any client, and

- Any efforts EPC has undertaken to sell the capital expenditure.

The omitted information is relevant both to EPC's duty to mitigate the damages it claims relating to capital expenditures allegedly incurred in relation to the Project and to EPC's damages more broadly. EPC claims over $4 million in damages relating to equipment EPC has allegedly been unable to sell or use for any purpose other than the TTI Project. In light of that claim, this

interrogatory is squarely directed at information regarding EPC's purported damages and mitigation efforts. TTI undoubtedly is entitled to evidence of EPC's mitigation efforts—EPC's claimed damages would be very different if, for example, EPC has not taken steps to market and sell the equipment, rejected reasonable offers to purchase the equipment, or has been using the equipment to manufacture products for other customers. Therefore, TTI is entitled to know where EPC is currently keeping this equipment, whether EPC has been able to put the equipment to a productive use after the termination of the MSA, and how seriously EPC has attempted to mitigate its damages by selling the equipment.

Accordingly, TTI respectfully requests that the Court order EPC to fully respond to Interrogatory 11.

## II. EPC Must Produce the Notes Prepared by Its Corporate Representative in Preparation for His Deposition.

On January 19, 2024, TTI deposed EPC under Rule 30(b)(6), with Mr. Kargarzadeh testifying on behalf of EPC. Mr. Kargarzadeh brought notes with him to the deposition, which he stated he had made in preparation for the deposition. (EPC 30(b)(6) Dep. Tr. 12:9-21; attached hereto as Ex. J.). TTI's counsel requested that Mr. Kargarzadeh make his notes available to TTI, to which Mr. Kargarzadeh, testifying as EPC's corporate representative, agreed.[3] Subsequently, TTI requested in Fifth Set of Requests for Production, Request 5, "[a]ny notes created by EPC's corporate representative in preparation for the 30(b)(6) deposition of EPC." Despite Mr. Kargarzadeh's agreement to produce the notes, EPC's response to Request 5 objects to the relevancy of the information while also claiming the notes are protected by the attorney-client privilege or attorney work product doctrine.

---

[3] During his deposition, Mr. Kargarzadeh offered to produce the notes to TTI, saying "[i]f they want a copy of it, you can have [it]." (Ex. J, EPC 30(b)(6) Dep. Tr. 11:21-22).

Mr. Kargarzadeh's notes are relevant to this litigation and are subject to discovery under Rule 612, which requires production, except in limited circumstances, of writings used to refresh a deponent's memory prior to testifying. Despite EPC's objection, the notes are not privileged, as Mr. Kargarzadeh has given no indication that his notes reflect his communications with or the mention impressions or theories of counsel. Moreover, even if the notes were privileged, EPC has waived that privilege by failing to provide a privilege log describing the documents for more than three months after first asserting the objection. EPC requests that the Court order EPC to comply with Mr. Kargarzadeh's offer and produce his notes.

### A.     Mr. Kargarzadeh's Notes are Properly the Subject of Discovery.

Mr. Kargarzadeh testified that he prepared the notes while he was preparing for the deposition as a "cheat note" so that he could remember key facts while testifying. (Ex. J, EPC 30(b)(6) Dep. Tr. 12:5-21.) Because Mr. Kargarzadeh prepared the notes personally while preparing his deposition for the purpose of refreshing his memory prior to testifying, the notes are subject to discovery under Federal Rule of Evidence 612(a)(2). [4]

Courts in the Fourth Circuit routinely require parties to produce documents relied upon to prepare a deponent. *See, e.g.*, *Greenwood Realty, Inc. v. Action Realty, Inc.*, No. 8:09-CV-02683-JMC, 2011 WL 652531, at *2 (D.S.C. Feb. 15, 2011) (granting motion to compel production of privileged material that witness used to prepare for deposition); *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 240 (D. Md. 2010) ("Where documents used to prepare a deponent are not privileged, that information must be provided in discovery."). This is especially the case when the notes were reviewed in preparation for a Rule 30(b)(6) deposition of a corporate entity.

---

[4] Federal Rule of Evidence 612 applies to documents used in preparation of depositions. *See, e.g.*, *Nutramax Lab'ys, Inc. v. Twin Lab'ys Inc.*, 183 F.R.D. 458, 467 (D. Md. 1998) ("many courts and commentators have concluded that Fed.R.Evid. 612 is applicable to depositions, through Fed.R.Civ.P. 30(c)").

13

*See Nutramax Lab'ys, Inc.*, 183 F.R.D. at 469 ("There is a greater need to know what materials were reviewed by . . . designee witnesses in preparation for deposition since the substance of their testimony may be based on sources beyond personal knowledge."). Likewise, "[i]f the witness prepared the document (s) reviewed in preparation for the deposition . . . there may be a greater need for disclosure than if the witness reviewed documents prepared by others." *Id.* at 470.

Here, the notes at issue meet each criteria favoring disclosure identified in the decisions above. By Mr. Kargarzadeh's own testimony the notes were prepared by him, in preparation for his deposition as a corporate representative pursuant to Rule 30(b)(6), to help him remember the things he was designated to testify about. (Ex. J, EPC 30(b)(6) Dep. Tr. 11:15 – 12:21.) Consistent with the practice in the Fourth Circuit, the Court should order EPC to produce Mr. Kargarzadeh's notes pursuant to Federal Rule of Evidence 612(a)(2).

### B.    The Notes are Not Privileged.

EPC's objection that Mr. Kargarzadeh's notes are protected by the attorney-client privilege and the work product doctrine is without merit. Neither the attorney-client privilege nor the work product doctrine protects the personal notes of a deponent, taken to refresh his own recollection prior to testifying, and not reflecting his communications with counsel or the mental impressions or opinions of counsel.

The attorney-client privilege "protects the substance of communications made in confidence by a client to his attorney" and an attorney's confidential communications to his client or agents. *United States v. (Under Seal)*, 748 F.2d 871, 874 (4th Cir. 1984). Because the privilege cuts against the general presumption of open discovery, the "privilege is to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proc.*, 727 F.2d 1352, 1355 (4th Cir. 1984) (quotations omitted). Mr. Kargarzadeh has not testified—and EPC has presented no evidence—that Mr. Kargarzadeh received his notes from his

14

attorneys or that the notes reflect the substance of his communications with his attorneys for the purpose of seeking legal advice. Accordingly, the attorney-client privilege does not prevent disclosure of Mr. Kargarzadeh's notes.

"The work-product doctrine protects an attorney's work done in anticipation of litigation." *Sherrill v. DIO Transp., Inc.*, 317 F.R.D. 609, 614 (D.S.C. 2016) (citing *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011)). The work product doctrine protects two types of information: "Fact work product consists of documents prepared by an attorney that do not contain the attorney's mental impressions. Opinion work product is the mental impressions, opinions, and legal theories of counsel." *MAG Mut. Ins. Co. v. Brown*, No. 6:14-CV-353, 2015 WL 13648556, at *12 (D.S.C. July 24, 2015) (internal quotations and citations omitted). Underlying both types of work product is the goal of protecting "the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Mr. Kargarzadeh is not an attorney. Mr. Kargarzadeh did not testify that his notes contain "the mental impressions, opinions, and legal theories of counsel," nor has EPC done anything to substantiate such a claim. *MAG Mut. Ins. Co.*, 2015 WL 13648556, at *12. Therefore, the work product doctrine does not apply to Mr. Kargarzadeh's notes and does not provide a basis to withhold their production.

Accordingly, Mr. Kargarzadeh's notes are not privileged, and the Court should order EPC to produce them.

### C. EPC Has Waived Any Privilege Over the Notes by Failing to Produce a Privilege Log.

Even if the notes were privileged, EPC has waived this privilege by failing to provide TTI with a privilege log.[5] If EPC is to withhold Mr. Kargarzadeh's notes as privileged, Federal Rule

---

[5] Although the Parties agreed that neither Party would have to include on a privilege log communications between that Party and the Party's counsel sent after the filing of this litigation and relating to this litigation, Mr. Kargarzadeh's notes fall outside this exception. Mr.

15

Civil Procedure 26(b)(5)(A) requires EPC to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Three months after objecting to Request 5 on the basis of privilege, EPC still has not complied with this obligation. EPC has not disclosed the length of Mr. Kargarzadeh's notes notes, whether they constitute a single document or multiple documents, or whether the notes are solely his own work or were written in the margins of other document (and, if so, the nature of those documents). Courts in the Fourth Circuit frequently find that "[f]ailure to timely serve a duly signed privilege log meeting the requirements of Rule 26(b)(5)(A) shall be deemed a waiver of the protection otherwise claimed." *Rhodes v. Ingram*, No. 7:13–CV–192–BR 2015 WL 1038136, at *4 (E.D.N.C. Mar, 10, 2015); *see also Jones v. Bank of Am., N.A.*, No. 3:14-CV-11531, 2015 WL 1808916, at *5 (S.D.W. Va. Apr. 21, 2015) ("Courts have held that the failure to supply a privilege log as required by Rule 26(b)(5)(A) may result in a waiver of the objection."). The Court should reach the same result here and find that by failing to produce a privilege log, EPC has waived any claim of privilege over Mr. Kargarzadeh's notes made in preparation of his deposition as EPC's corporate representative.

Nor has EPC adequately and specifically stated the basis its privilege assertion in the absence of a privilege log. EPC's Response to Request 5 offers only a general privilege objection, stating that the notes "are protected by the attorney-client privilege and/or work-product doctrine." EPC must state whether it is asserting only the attorney-client privilege, only the work-product doctrine, or both, and describe the basis for refusing to produce Mr. Kargarzadeh's notes. *See*

---

Kargarzadeh's personal notes taken to help him prepare for his deposition do not constitute communications between Mr. Kargarzadeh and EPC's counsel.

*N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011) (In claiming the attorney-client privilege, . . . the party must "expressly make the claim" and "describe the nature of the documents ... in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); *Curtis v. Time Warner Ent.-Advance/Newhouse P'ship*, No. 3:12-CV-2370-JFA, 2013 WL 2099496, at *3 (D.S.C. May 14, 2013) ("A party objecting on the grounds of privilege must state the specific nature of the privilege being asserted, as well as, *inter alia*, the nature and subject matter of the communication at issue . . . .").

Because EPC failed to provide an adequately specific basis for its privilege objection in response to Request 5 and failed to provide a compliant privilege log with its responses, the Court should find that EPC has waived any privilege justifying withholding the documents from discovery and order EPC to produce Mr. Kargarzadeh's notes.

### III.     The Court Must Award TTI Its Reasonable Attorneys' Fees Incurred in Connection with this Motion.

TTI has demonstrated good cause for the Court to compel EPC to respond to Interrogatories 3, 4, 8, and 11 and to produce documents in response to Request for Production 5. Accordingly, the Court should require EPC to pay TTI's costs, including attorney's fees, in bringing this motion.

Under Federal Rule of Civil Procedure 37, cost-shifting is non-discretionary. Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."). By refusing to produce relevant, non-privileged documents and by refusing to provide a definitive answer to TTI's interrogatories, EPC has caused TTI to burden the Court with this motion.

17

None of the exceptions to cost-shifting under Rule 37 apply. TTI has filed this motion only after engaging in multiple rounds of negotiations with EPC, which included sending three letters to EPC's counsel and meeting and conferring with EPC's counsel in an attempt to resolve these issues without Court intervention. Accordingly, TTI has "attempt[ed] in good faith to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(5)(A)(i). Similarly, as described in this motion and in TTI's correspondence with EPC's counsel, TTI's right to the information and documents it seeks is clear, meaning that EPC's failure to comply with TTI's discovery requests was not "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii).

Accordingly, along with granting TTI's motion, TTI requests that the Court order EPC to pay TTI's reasonable costs related to bringing this motion.

## **CONCLUSION**

The Court should require EPC to fully respond to TTI's Interrogatories 3, 4, 8, and 11 and produce documents in response to TTI's Request for Production 5.

*[SIGNATURE PAGE FOLLOWS]*

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ John F. Kuppens*
John F. Kuppens
Federal Bar No. 5026
E-Mail: john.kuppens@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC  29201
(803) 799-2000

Marc E.  Williams
E-Mail: marc.williams@nelsonmullins.com
949 Third Avenue / Ste 200
Huntington, WV 25701
(304) 526-3500
*Admitted Pro Hac Vice*

Kelly M. Reid
Federal Bar No. 13063
E-Mail: kelly.reid@nelsonmullins.com
One Wells Fargo Center
301 South College Street / 24th Floor
Charlotte, NC 28202
(704) 417-3000

MAYNARD NEXSEN PC

Lane W. Davis
Federal Bar No. 7739
E-Mail:  LDavis@maynardnexsen.com
104 South Main Street, Suite 900
Greenville, SC 29601
(864) 282-1145

*Attorneys for Plaintiff/Counter-Defendant TTI Consumer Power Tools, Inc.*

August 19, 2024